UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

WENDY J. C. [1]

                      Plaintiff,

        v.

ANDREW SAUL, COMMISSIONER
of Social Security,

                      Defendant.

Case No. 3:19-cv-01434-AC

OPINION AND ORDER

---

ACOSTA, Magistrate Judge:

Plaintiff Wendy J. C. ("Plaintiff") filed this action under section 205(g) of the Social Security Act (the "Act") as amended, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of Social Security (the "Commissioner") who denied her social security disability insurance benefits ("DIB") and supplemental security income ("SSI")(collectively "Benefits"). The court finds the ALJ's discounting of Plaintiff's testimony, lay testimony, and limitations

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

PAGE 1 - OPINION AND ORDER

provided by treating and examining medical providers was supported by substantial evidence in the record and not in error. Accordingly, the Commissioner's final decision is affirmed.[2]

*Procedural Background*

On or about August 10, 2014, Plaintiff filed an application for DIB alleging an onset date of July 31, 2014. She subsequently filed an application for SSI on March 6, 2015, claiming the same onset date. The applications were denied initially, on reconsideration, and by Administrative Law Judge David R. Gutierrez (the "ALJ") after a hearing. The Appeals Council granted review, vacated the ALJ's decision, and remanded the case to the ALJ to consider the extent to which Plaintiff's ability to reach, handle, and finger is limited. (Tr. of Social Security Administrative R., ECF No. 12 ("Admin. R."), at 150.) The Appeals Council noted the ALJ "afforded some weight to the opinion of consultative examiner Farzana Sahi, M.D. ("Dr. Sahi"), who "opined the claimant would be limited to only occasional use of her hands bilaterally for reaching, handling, fingering, feeling, and pushing/pulling," but did not "specify whether the doctor's opinion regarding manipulative limitations is being accepted or rejected." (Admin. R. at 150.) These limitations were of consequence in that all the jobs identified by the vocational expert required "some frequent manipulatives per the Dictionary of Occupational Titles." (Admin. R. at 150.) The Appeals Council directed the ALJ to further consider Plaintiff's maximum residual functional capacity during the entire period at issue, evaluate and explain the weight given to the non-treating source opinion, and, if warranted, obtain supplemental evidence from a vocational expert. (Admin. R. at 150.)

\ \ \ \ \

---

[2] The parties have consented to jurisdiction by magistrate judge in accordance with 28 U.S.C. § 636(c)(1).

PAGE 2 - OPINION AND ORDER

The ALJ held a new hearing, at which he noted the primary issue was the extent to which Plaintiff could use her hands. (Admin. R. at 95.) He represented that if he found Plaintiff was limited to occasional use of her hands, he would "grant disability." (Admin. R. at 96.) The ALJ issued a second decision on December 19, 2018 (the "Decision"), again denying Plaintiff's applications finding Plaintiff "has not been under a disability within the meaning of the Social Security Act form July 31, 2014, through the date of this decision." (Admin. R. at 15.) The Appeals Council denied reviewed and the Decision became the final decision of the Commissioner.

## Factual Background[3]

Plaintiff is sixty years old. She graduated from high school and completed one year of college. Her past relevant work experience includes IT desktop support technician. Plaintiff has not been involved in a successful work attempt since July 31, 2014. She alleges disability because of narcolepsy/hypersomnia, rheumatoid arthritis, osteoarthritis, asthma with COPD, fibromyalgia, esophageal reflux, adrenal anomaly, hypothyroidism, chronic diarrhea, and vocal cord dysfunction. Plaintiff last met the insured status requirements entitling her to DIB on December 31, 2018.

## I. Testimony

### A. Plaintiff

In August 2014, Plaintiff completed a Function Report ("Report") in which she described her average day as follows: "maintain C-PAP, take meds., walk dog, eat a meal, read news online,

---

[3] Plaintiff asserts the ALJ erred when considering her ability to use her hands. Consequently, the court's review concentrates on evidence relating primarily to limitations on Plaintiff's ability to manipulate, handle, feel, push, pull, and reach with her hands.

PAGE 3 - OPINION AND ORDER

walk dog, eat, nap, etc." (Admin. R. at 489.) She remained able to manage her personal care and finances; prepare daily meals; vacuum, clean her bathroom and her kitchen weekly with regular breaks; walk her dog several times a day; drive a car; and shop in stores and online for food and clothes monthly for an hour or more. (Admin. R. at 489-492.) She enjoyed fishing, crocheting, computer games, and reading, but had difficulty concentrating and had to take breaks due to pain. (Admin. R. at 492.) She rarely spent time outside of the house or with others, stating she no longer had a social life because of fatigue and pain. (Admin. R. at 492-93.) Plaintiff stated she had difficulty sleeping at night due to sleep apnea, narcolepsy, and extreme fatigue during the day. (Admin. R. at 489.)

Plaintiff reported she was unable to lift more than thirty pounds, walk more than a third of a mile before resting for ten-to-fifteen minutes, or pay attention for more than twenty-to-thirty minutes. (Admin. R. at 493.) Her conditions affected her ability to lift, squat, bend, stand, walk, sit, talk, climb stairs, remember, complete tasks, concentrate, and use her hands. (Admin. R. at 493.) She had difficulty handling stress and changes in routine and was claustrophobic. (Admin. R. at 494.)

At her first hearing before the ALJ held on June 6, 2016 ("First Hearing"), Plaintiff testified she was unable to return to her previous employment as a desktop technician due to narcolepsy, fatigue, inability to concentrate, and memory issues. (Admin. R. at 61, 65.) Additionally, her arthritis made it difficult to climb stairs, crawl under desks and into ceilings, and use a keyboard for extended periods of time. (Admin. R. at 65, 66.) After a few minutes of typing, she had difficulty moving her fingers efficiently. (Admin. R. at 66.) She did some housework but no yardwork. (Admin. R. at 67.) She had chronic fatigue and needed to take naps for two to three hours daily. (Admin. R. at 69-70.)

PAGE 4 - OPINION AND ORDER

After referring Plaintiff to a rheumatologist, the ALJ held a second hearing on December 23, 2016 ("Second Hearing"). (Admin. R. at 76, 78.) Plaintiff reported she lived with a friend, drove to the hearing, and did yoga and aerobic stretching at least twice a week. (Admin. R. at 83, 85.) She continued to suffer from joint swelling, rashes, and redness in her hands. (Admin. R. at 86.) Hand movements, particularly fine motor skills, were painful and she was able to use a computer for only thirty to forty-five minutes before needing a twenty- to thirty-minute break. (Admin. R. at 86.)

By the time of the third and final hearing held on August 20, 2018 ("Third Hearing"), Plaintiff was working six hours a day, every other day, as a cashier at Best Buy. (Admin. R. at 93-94.) Plaintiff occasionally had difficulties handling money due to swelling in her hands, primarily the left, and working longer than six hours a day made her hands much worse. (Admin. R. at 96-97.) Plaintiff took Naproxen twice a day for swelling, which helped but did not eliminate the swelling and pain on her workdays, and she took ten-minute breaks every hour when she could find someone to cover for her. (Admin. R. at 97, 98.) On the days she did not work, Plaintiff made a point of resting her hands by avoiding fine, manipulative movements. (Admin. R. at 97.) Plaintiff did not believe she could handle a full-time cashier position due to the pain in her hands, her "sleepiness," and the need to take frequent breaks. (Admin. R. at 98.)

*B. Lay Witnesses*

Carole Totten, a friend of Plaintiff for more than twenty-years ("Totten"), submitted a letter in May 2018 describing Plaintiff as an "energetic, highly intelligent, and hard[-]working" individual who went from "working 12[-]hour days to being unable to stay awake for 6[-]hours without being exhausted." (Admin. R. at 555.) Totten explained Plaintiff needed to "carefully consider her activities," "make sure she has time for a nap," and take into account the huge price

PAGE 5 - OPINION AND ORDER

she pays for any "extraneous fun." (Admin. R. at 555.)  Totten noted Plaintiff "has shown herself now to be slightly paranoid, depressed, and anxious" and leaves the house only once or twice a week. (Admin. R. at 555.)

Janine E. Fowler ("Fowler"), who has known Plaintiff for almost ten years, effectively agreed with Totten's evaluation in a May 18, 2016 letter. (Admin. R. at 556.)  Fowler commented on Plaintiff's transition from someone with "impressive stamina" and a "zest for adventure" to a "much more sedate," "withdrawn [,] and quiet" individual who was "barely conscious" for two days after attending a renaissance festival earlier that year. (Admin. R. at 556.)

II.  Medical Evidence

*A.  Treating Physicians*

1.  Anna P. Peter, M.D.

In a letter dated August 8, 2014, and addressed to "To whom it may concern" ("Peter Letter"), Dr. Peter represented Plaintiff "has the following medical problems that affect her ability to hold a full[-]time position." (Admin. R. at 604.)  Dr. Peter then listed Plaintiff's "active problems," including esophageal reflux; tobacco use; rheumatoid arthritis; depressive disorder; anxiety disorder; obstructive sleep apnea; osteoarthritis; hypothyroidism; diabetes mellitus type 2; low-back pain; fibromyalgia; allergic rhinitis due to pollen, dust mites, and mold; adrenal anomaly; severe obesity; vocal cord dysfunction; chronic diarrhea; and hypersomnia. (Admin. R. at 604.)

2.  Harris Health System Fellows

In July 2017, Plaintiff complained to Bochra Jandali, M.D. ("Dr. Jandali"), of joint pain, swelling, and morning hand stiffness that lasted for thirty minutes. (Admin. R. at 1895, 1901.)  Dr. Jandali observed diffuse tenderness and soft tissue puffiness in various joints in Plaintiff's hands but noted the lack "of strong evidence of inflammatory arthritis." (Admin. R. at 1899-1900.)

PAGE 6 - OPINION AND ORDER

Plaintiff again complained of left-hand pain and swelling on April 26, 2018. (Admin. R. at 1951.)  The swelling appeared in the morning and prevented Plaintiff from making a fist with her left hand, but it improved throughout the day. (Admin. R. at 1951.)  Humaira Abid, M.D. ("Dr. Abid") reported an absence of swelling in the left hand and joints, normal temperature and radial pulse, and a darkening of the skin when compared to the right hand. (Admin. R. at 1951.)  Dr. Abid considered results from Doppler testing of Plaintiff's hands to be within normal limits. (Admin. R. at 1980-81.)  Plaintiff returned on May 29, 2018, stating she had numbness in her hands, primarily in the morning, that radiated to her forearm. (Admin. R. at 1964.)  Dr. Abid opined the hand numbness was likely due to carpal tunnel syndrome. (Admin. R. at 1967.)

On August 30, 2018, Plaintiff sought treatment from Ishan J. Yass'ne, M.D. ("Dr. Yass'ne") for continued pain, swelling, and stiffness, primarily in her left hand, that improved during the day. (Admin. R. at 2077.)  Dr. Yass'ne observed diffuse tenderness in various joints and multiple tender points in Plaintiff's hands and opined that while "there could be a component of inflammatory arthritis", the "pain is more likely secondary to fibromyalgia and DJD/radiculopathy." (Admin. R. at 2082.)  She also noted Plaintiff was "requesting a letter from a rheumatologist [for] assistance with getting disability approved." (Admin. R. at 2078.)  Dr. Yass'ne authored a handwritten letter "in support of [Plaintiff's] disability filing" ("Yass'ne Letter"). (Admin. R. at 2067.)  In the Yass'ne Letter, which was not dated, Dr. Yass'ne commented Plaintiff "has arthritis due to Sjogren's and it interferes with daily activities and causes distress." (Admin. R. at 2067.)

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

PAGE 7 - OPINION AND ORDER

B. *Examining Physicians*

    1. Christine A. McBurney, M.D.

On October 13, 2014, Dr. McBurney examined Plaintiff for issues related to a possible flare of rheumatoid arthritis. (Admin. R. at 707.) Plaintiff indicated she was diagnosed with early onset rheumatoid arthritis in 1997, which quickly improved with prednisone. (Admin. R. at 708.) She did not have any issues until she returned to Oregon in early 2012 and suffered from pain in her wrists and other joints during periods of cold, rainy weather. (Admin. R. at 708.) She also reported suffering an injury to her left wrist a few years earlier when she heard a "pop" while carrying a computer. (Admin. R. at 708.) Since then, Plaintiff has had constant pain in her left wrist and she has not been able to hold weight with her left hand due to increased pain. (Admin. R. at 708.) Dr. McBurney described her examination as "unremarkable" and noted Plaintiff did not exhibit joint tenderness, synovitis, or puffy fingers but did have some general osteoarthritis and tendinitis symptoms. (Admin. R. at 709, 711.) Dr. McBurney found X-rays of Plaintiff's hands revealed no erosions and a change in Plaintiff's left fifth finger was consistent with a childhood injury. (Admin. R. at 711.)

    2. Farzana Sahi, M.D.

Dr. Sahi examined Plaintiff at the request of the Texas Department of Assistive and Rehabilitative Services on July 12, 2016. (Admin. R. at 1637.) At that time, Plaintiff's chief complaints were narcolepsy, rheumatoid arthritis, osteoarthritis, and fibromyalgia. (Admin. R. at 1637.) Plaintiff reported "pain in the shoulder, hand and knee joint," with symptoms of "swelling, [constant] pain and stiffness." (Admin. R. at 1637.) She represented she "is able to walk a mile[,] stand for 30 minutes to an hour," "has difficulty taking stairs," and "is able to write and hold a cup of coffee . . . [but] has difficulty opening a jar top." (Admin. R. at 1637.)

PAGE 8 - OPINION AND ORDER

Dr. Sahi observed no muscle weakness or atrophy, normal sensation to pinprick and vibration in all four extremities, and good bilateral grip strength. (Admin. R. at 1639.) X-rays of Plaintiff's right hand were negative. (Admin. R. at 1639.) Dr. Sahi noted arthritis did not result in limitations in Plaintiff's joints with the exception of slight swelling in both hands and Plaintiff was "on Plaquenil and anti-inflammatory for her arthritis at this time." (Admin. R. at 1640.) He believed Plaintiff retained the ability to frequently lift and carry up to twenty pounds and continuously lift and carry up to ten pounds; occasionally reach, handle, finger, feel, push, and pull with both hands; occasionally balance, stoop, kneel, crouch, crawl, and climb stairs, ramps, ladders or scaffolds; stand and walk up to two hours and sit up to six hours without interruption and in total during an eight-hour work day; (Admin. R. at 1641-44.)

C. *Reviewing Physicians*

Thomas W. Davenport, M.D. ("Dr. Davenport"), reviewed Plaintiff's medical records and on October 21, 2014, diagnosed Plaintiff with chronic pulmonary insufficiency and other disorders of the gastrointestinal system but did not consider Plaintiff disabled. (Admin. R. at 100.) Dr. Davenport believed Plaintiff retained the ability to push and/or pull; occasionally lift or carry twenty pounds, climb ramps, stairs, ladders, ropes, and scaffolds, and stoop, kneel, crouch or crawl; frequently lift or carry ten pounds and balance; stand and/or walk and sit about six hours in an eight-hour workday; and should avoid even moderate exposure to fumes, odors, dusts, and gases. (Admin. R. at 106-07.) Accordingly, Dr. Davenport effectively found Plaintiff was able to engage in light work. (Admin. R. at 105.) Susan E. Moner, M.D. ("Dr. Moner"), another reviewing physician, affirmed Dr. Davenport's diagnosis and findings on February 15, 2015. (Admin. R. at 111, 119-121.)

\ \ \ \ \

\ \ \ \ \

PAGE 9 - OPINION AND ORDER

*D.  Images and Testing*

X-rays of Plaintiff's hand requested by Dr. Peter on October 6, 2014, revealed: "Anatomic alignment without dislocation.  No acute fracture or aggressive osseous features.  Moderately advanced left 5th PIP joint space narrowing with adjacent small proliferative osteophyte.  No erosions or lytic/destructive cortical features.  Mild osteopenia." (Admin. R. at 749.)  On March 31, 2016, Plaintiff's hands were again x-rayed with similar results,[4] specifically:  "There is no displaced fracture or malalignment.  The joint spaces are well maintained.  No evidence of osseous erosion.  The visualized soft tissues appear normal." (Admin. R. at 1720.)  The impression was "no acute osseous lesion" and "no erosive arthropathy." (Admin. R. at 1720.)  Subsequent x-rays of Plaintiff's right hand on July 12, 2016, showed "normal alignment without fractures or dislocations," unremarkable joints and wrists, and "no soft tissue swelling or radiopaque foreign bodies." (Admin. R. at 1647.)

Dr. Abid ordered bilateral upper extremity arterial doppler testing of Plaintiff's upper extremities on April 26, 2018, which was completed on May 17, 2018.  (Admin. R. at 1980.)  The results were considered normal with "no significant stenosis" and "normal triphasic flow seen bilaterally." (Admin. R. at 1980.)

III.  Vocational Evidence

Kay Squires Gilreath, vocational counselor and consultant ("Gilreath"), participated in the First Hearing and the Second Hearing and testified as a vocational expert.  (Admin. R. at 71, 87, 557.)  She characterized Plaintiff's last work experience as a desktop support person with work

---

[4] For reasons not explained, the "healed fracture deformity of the fifth digit middle phalanx" was noted on the right, not left, hand.  (Admin. R. at 1720.)

demands in the medium range and skills including problem solving, customer service, "clerical skills, typing, filing, data entry, high organizational skills, instructional skills, [and] setting up and being familiar with computer programs" transferable as semi-skilled to light and sedentary jobs. (Admin. R. at 71-73.)

In the First Hearing, the ALJ asked Gilreath what jobs a hypothetical individual of the claimant's age, education, and transferable skills could perform if they were limited to no more than light work;[5] "occasional posturals[;] no ladders, ropes or scaffolds[;] overhead reaching, reach, handle, finger and feel bilaterally, frequently; [and] avoid concentrated exposure to fumes, odors and dusts." (Admin. R. at 73.) Gilreath testified such an individual could perform the jobs of general clerk, appointment clerk, and information clerk, all of which were classified as light or sedentary semi-skilled work. (Admin. R. at 73.) When Plaintiff's counsel added requirements the individual be allowed to take breaks or otherwise be off-task for fifteen to twenty percent of a workday, use a restroom six times a day for ten to fifteen minutes at a time, or miss two to four workdays a month, Gilreath opined there was no work available for such an individual. (Admin. R. at 74-75.) Gilreath also testified increasing the limitation on bilateral handling and fingering from frequent to occasional, or adding a requirement the individual be allowed to elevate her legs

---

[5] "Light Work" is defined in 20 C.F.R. 404.1567(b) as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

PAGE 11 - OPINION AND ORDER

to waist level approximately twenty-five percent of the workday, would eliminate all but the information clerk, which requires only occasional handing and fingering. (Admin. R. at 75-76.)

At the Second Hearing, Gilreath identified file clerk, appointment clerk, general administrative clerk, and receptionist as acceptable jobs for an individual similar to Plaintiff who was capable of light work with occasional posturals, frequent bilateral manipulations, and limited exposure to irritants. (Admin. R. at 87-89.) However, if the individual was limited to "occasional use of her hands, bilateral for everything, would be precluded from all of the identified jobs. (Admin. R. at 88.) Similarly, an individual who needed to take twenty- to thirty-minute breaks every thirty to forty-five minutes would not be employable. (Admin. R. at 89.)

IV.  ALJ Decision

The ALJ found Plaintiff suffered from the severe impairments of chronic obstructive pulmonary disease, Sjogren's syndrome, fibromyalgia, and obesity, and that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 31, 2014. (Admin. R. at 14.)  While conceding Plaintiff's impairments limited her ability to perform basic work activities, the ALJ found such impairments did not meet or equal the severity of any listed impairment. (Admin. R. at 25.)  As a result of her impairments, the ALJ considered Plaintiff capable of standing, walking, and/or sitting for six hours in an eight-hour day and of performing no more than light work with the following additional limitations:  "There can be only occasional climbing, stooping, balancing, kneeling, crouching, and crawling.  There should be no concentrated exposure to irritants.  The claimant would be limited to frequent manipulation bilaterally." (Admin. R at 26.)

In light of these limitations, the ALJ deemed Plaintiff unable to perform her past relevant work of desktop support technician. (Admin. R. at 32.)  The ALJ acknowledged the vocational

experts' testimony that Plaintiff had transferrable clerical skills such as typing, filing, data entry, organization, instruction, problem solving, customer service, and computer familiarity and could perform the jobs of file clerk, appointment[6] clerk, general administration clerk, and receptionist. (Admin. R. at 33.) The ALJ concluded "although the claimant's additional limitations do not allow the claimant to perform the full range of light work, considering the claimant's age, education, and transferable work skills, a finding of 'not disabled' is appropriate under the framework of Medical-Vocational Rule 202.15 and Rule 202.07." (Admin. R. at 34.)

The ALJ considered the opinions offered by treating physicians Dr. Peter and Dr. Yass'ne in accordance with Social Security Ruling ("SSR") 96-2 and afforded them little weight, finding the opinions brief and conclusory, lacking identification of specific limitations resulting from Plaintiff's impairments, not supported by treatment records, and inconsistent with opinions offered by other physicians. (Admin. R. at 28-30.) The ALJ did give some weight, however, to the limitations identified by examining physician Dr. Sahi, expressly rejecting only the restriction of occasional use of Plaintiff's upper extremities finding such restriction inconsistent with Plaintiff's part-time work as a cashier at Best Buy which "would require frequent use of her hands." (Admin. R. at 29-30.)

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Admin. R. at 28.) The ALJ rejected Plaintiff's testimony she was unable work as unsupported by

---

[6] The ALJ referenced an "apartment clerk," but it is clear from the hearing transcript and the identified D.O.T. section the ALJ meant to refer to an "appointment clerk."

"evidence of symptoms, signs, . . . laboratory findings, [and] opinions of record." (Admin. R. at 31.) He also rejected Plaintiff's reports of disabling fatigue, explaining: "Given the medical evidence of record, daily activities and other progress notes, although claimant may experience some fatigue, the undersigned finds this symptom is not so severe as to preclude all work activity." (Admin. R. at 32.)

Finally, the ALJ discounted to some degree reports provided by third-party sources describing Plaintiff's daily activities and limitations. The ALJ questioned the accuracy of the reports based on the absence of medical training and the natural tendency for individuals with a close relationship to a claimant to agree with symptoms and limitations alleged by the claimant. (Admin. R. at 31.)

## Standard of Review

The Act provides for payment of DIB to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1) (2019). In addition, SSI may be available to individuals who are age sixty-five or over, blind, or disabled, and who do not have insured status under the Act. 42 U.S.C. § 1382(a) (2019). The burden of proof to establish a disability rests upon the claimant. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir.), *cert. denied*, 519 U.S. 881 (1996) (DIB); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992) (SSI). To meet this burden, the claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A) (2019). An individual will be determined to be disabled only if there are physical or mental impairments of such severity that the individual is not only unable to do previous work but cannot, considering his or her age, education, and work

PAGE 14 - OPINION AND ORDER

experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2) (A) and 1382c(a)(3)(B) (2019).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI because he or she is disabled. 20 C.F.R. §§ 404.1520 and 416.920 (2019); *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (DIB); *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989) (SSI). First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, Benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, Benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of the specifically listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant has performed in the past. If the claimant is able to perform work which he or she has performed in the past, a finding of "not disabled" is made and Benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to do work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy

PAGE 15 - OPINION AND ORDER

considering his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. *Distasio v. Shalala*, 47 F.3d 348, 349 (9th Cir. 1995) (DIB); *Drouin*, 966 F.2d at 1257 (SSI). The claimant is entitled to Benefits only if he or she is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

When an individual seeks either DIB or SSI because of disability, judicial review of the Commissioner's decision is guided by the same standards. 42 U.S.C. §§ 405(g) and 1383(c)(3) (2019). The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson* v. *Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Robbins* v. *Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Tylitzki* v. *Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993).

The reviewing court may not substitute its judgment for that of the Commissioner. *Robbins*, 466 F.3d at 882; *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Thus, where the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld, even where the evidence can support either affirming or reversing the ALJ's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In determining a claimant's residual functioning capacity, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical

records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883, *citing* SSR 96-8p, 1996 WL 374184, at \*5; 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (2019); *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir.1996). The reviewing court must consider the entire record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007). However, a reviewing court may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *see also Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

*Discussion*

Plaintiff asserts the ALJ erred by improperly discounting Plaintiff's testimony, testimony from third parties, the limitations identified by Dr. Sahi, and the opinions of Dr. Peter and Dr. Yass'ne and, as a result, failed to include all of Plaintiff's limitations in his residual functional capacity assessment. Plaintiff asks the court to enter an order reversing the Commissioner's final decision and remand for an immediate award of Benefits or, alternatively, for additional evidence and findings. The Commissioner contends the ALJ properly considered the evidence in accordance with the terms of the Act and related regulations, and the decision should be affirmed.

I.  Physician's Opinions

Plaintiff asserts the ALJ failed to provide the requisite "clear and convincing reasons for rejected the uncontroverted medical opinions from treating or examining doctors" arguing the "opinion of a nonexamining physician is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician." (Pl.'s Opening Br., ECF No. 13, at 10.)

PAGE 17 - OPINION AND ORDER

Plaintiffs also contend the ALJ's reliance on SSR 96-2 was error because the SSR was rescinded in March 2017, and the ALJ should have applied the federal regulations found in 20 C.F.R. § 404.1527(2)(c).  First, the Commissioner rescinded SSR 96-2p only "for claims filed on or after March 27, 2017."  SSR 96-2P, 2017 WL 3928298, at *1 (March 27, 2017).  Plaintiff filed her applications in August 2014 and March 2015; thus, the ALJ properly considered Plaintiff's claims under SSR 96-2.  Second, even assuming SSR 96-2 was rescinded with regard to Plaintiff's claims, the ALJ's justifications were adequate under the applicable law and regulations.

The weight attributable to the opinion of a medical source depends, in part, on the professional relationship between the physician and the claimant.[7]  Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than that of a physician who did not examine the claimant but formed an opinion based on a review of the claimant's medical records.  _Holohan v. Massanari_, 246 F.3d 1195, 1201-1202 (9th Cir. 2001).

The ALJ can reject a treating or examining physician's opinion that is inconsistent with the opinions of other treating or examining physicians, if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.  _Thomas v._

---

[7] The court notes that for all claims filed on or after March 27, 2017, the regulations set forth in 20 C.F.R. § 404.1520c, not § 404.1527, govern.  The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."  20 C.F.R. § 404.1520c (2019).  Thus, the new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule.  _See_ 20 C.F.R. § 404.1520c.  In this case, Plaintiff filed her claims for benefits in 2014 and 2015, well before March 27, 2017.  _See_ 20 C.F.R. § 404.614 (defining when an application for benefits is considered filed).  Thus, the court analyzes Plaintiff's claims utilizing § 404.1527 (which governs evaluating opinion evidence for claims filed prior to March 27, 2017).

PAGE 18 - OPINION AND ORDER

_Barnhart_, 278 F.3d 947, 957 (9th Cir. 2002). An uncontradicted opinion may be rejected only for clear and convincing reasons. _Thomas_, 278 F.3d at 956-957.

The opinion of a non-examining physician by itself does not constitute substantial evidence to reject the opinion of a treating or examining physician. _Lester v. Chater_, 81 F.3d 821, 831 (9th Cir. 1996). It may constitute substantial evidence if it is consistent with other evidence in the record. _Magallanes v. Bowen_, 881 F.2d 747, 752 (9th Cir. 1989). Furthermore, an ALJ need not accept a physician's opinion that is brief, conclusory or inadequately supported by clinical findings. _Bayliss v. Barnhart_, 427 F.3d 1211, 1216 (9th Cir. 2005).

_A. Treating Physicians_

Plaintiff identifies Dr. Peter and Dr. Yass'ne as treating physicians, which means the ALJ must set forth clear and convincing reasons for affording their opinions little weight regarding Plaintiff's limitations, unless the opinions are contradicted by another treating or examining physician. To the extent the Peter Letter and Yass'ne Letter establish the authors believe Plaintiff is incapable of working,[8] these opinions are contradicted by Dr. Sahi, an examining physician, who essentially found Plaintiff capable of sedentary work with some additional postural and manipulative limitations. Consequently, the ALJ need offer only specific, legitimate reasons for not adopting the limitations identified by Dr. Peter and Dr. Yass'ne.

The ALJ rejected the opinions offered by Dr. Peter and Dr. Yass'ne, explaining they were brief, conclusory, lacking identification of specific limitations resulting from Plaintiff's

---

[8] To be clear, neither Dr. Peter nor Dr. Yass'ne affirmatively stated Plaintiff was incapable of performing work of any type. Dr. Peter merely identified medical problems that _affected_ Plaintiff's ability to hold a full-time position but did not state such problems _prevented_ Plaintiff from performing such work. Similarly, Dr. Yass'ne opined Plaintiff's arthritis interfered with Plaintiff's daily activities and caused distress but never commented on Plaintiff's ability to work.

PAGE 19 - OPINION AND ORDER

impairments, and not supported by treatment records. The opinions offered by these treating physicians identify one or more of Plaintiff's impairments and generally indicate these impairments affect her "ability to work" or "interfere with her daily activities." The letters fail to identify specific limitations resulting from Plaintiff's impairments and, particularly with regard to Plaintiff's ability to use her hands, are not are not supported by treatment records or clinical findings. Consequently, the ALJ did not need to accept the opinions of Plaintiff's treating physicians as set forth in the Petter Letter and Yass'ne Letter. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (physician's report should demonstrate how claimant's symptoms translate into specific functional deficits which preclude certain activities). The ALJ offered the requisite specific and legitimate reasons for rejecting the Peter Letter and the Yass'ne Letter, which reasons are supported by the record.

    *B. Examining Physician*

    The ALJ expressly rejected Dr. Sahi's limitation of occasional use of Plaintiff's upper extremities, finding such restriction inconsistent with Plaintiff's frequent use of her hands as a cashier. An ALJ may reject a physician's opinion that is contradicted by other evidence in the record. *Morgan*, 169 F.3d at 601. Dr. Sahi's limitations are inconsistent with those identified by reviewing physicians Dr. Davenport and Dr. Moner, who found Plaintiff capable of performing light work and placed no additional restrictions on Plaintiff's ability to use her upper extremities. While the opinion of a reviewing physician does not, by itself, constitute substantial evidence to reject the opinion of a treating or examining physician, inconsistencies between the opinions of an examining physician and a reviewing physician may change the ALJ's burden from providing clear and convincing reasons, to specific and legitimate reasons for rejecting such opinion.

PAGE 20 - OPINION AND ORDER

The ALJ expressly identified inconsistencies between Dr. Sahi's limitations and Plaintiff's daily activities as justification for his rejection of Dr. Sahi's restriction as "occasional" on Plaintiff's bilateral manipulation. Inconsistencies between a physician's opinion and a claimant's reported activities may provide a valid reason for discounting such opinion. *Ghanim v. Colvin*, 7663 F.3d 1154, 1162 (9th Cir. 2014). Plaintiff worked as a cashier, a job requiring frequent bilateral manipulation, six hours a day, every other day, which is undeniably inconsistent with Dr. Sahi's limitation. The ALJ provided specific and legitimate, if not clear and convincing, reasons for discounting Dr. Sahi's identified limitation on Plaintiff's ability to use her hands and did not err in this regard.

## II. Plaintiff's Testimony

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R. § 416.929 (2019). The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage, absent affirmative evidence the claimant is malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ must make sufficiently specific findings to permit the reviewing court to conclude the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment

PAGE 21 - OPINION AND ORDER

history, the claimant's daily activities, and inconsistencies in testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2013); *Tommasetti*, 533 F.3d at 1039. "Credibility determinations are the province of the ALJ" and the court may not "second-guess" the ALJ's determination if they have made specific findings that are supported by substantial evidence in the record. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms" and did not identify any evidence to establish Plaintiff was malingering. (Admin. R. at 28.) Consequently, the ALJ was required to offer clear and convincing reasons for rejecting Plaintiff's testimony with regard to the limitations supported by objective evidence. To meet this standard, "[t]he ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints – '[g]eneral findings are insufficient.'" *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005), (quoting *Reddick v. Chater*, 157 F.3d 715,722 (9th Cir. 1998)); *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (*en banc*.) ("[A] reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain.")

The ALJ stated "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Admin. R. at 28). The Ninth Circuit has expressly held a boilerplate statement such as this, without more, "falls short of meeting the ALJ's responsibility to provide 'a discussion of the evidence' and 'the reason or reasons upon which' his adverse determination is based." *Treichler v. SSA*, 775 F.3d 1090, 1103 (9th Cir. 2014) (quoting 42 U.S.C. § 405(b)(1)); *Brown-Hunter*, 806 F.3d at 493 (ALJ's finding that limitations identified by claimant were less serious than alleged based on unspecified claimant testimony and

PAGE 22 - OPINION AND ORDER

a summary of medical evidence insufficient to meet clear and convincing standard). Here, however, the ALJ engaged in additional discussion of the evidence and reasons for discounting Plaintiff's testimony.

At the outset, the court notes Plaintiff's written and oral testimony did not unequivocally establish Plaintiff was limited to only occasional use of her hands. In the summer of 2014, Plaintiff reported her hobbies included crocheting, which she enjoyed primarily in winter, and short computer games, both of which require extensive use of her hands. At the First Hearing she testified she could use a keyboard for only a few minutes before experiencing difficulty moving her fingers efficiently, yet she reported at the Second Hearing she could use a computer for thirty to forty-five minutes at a time before needing a break, and by the Third Hearing she was able to work six hours at a time as a cashier with only occasional difficulty handling money, and taking ten-minute breaks when someone was available to cover her. Plaintiff did not believe she could handle a full-time cashier position due, in part, to the pain in her hands, but did not comment on her ability to perform other jobs which required less or different use of her hands. The court is not convinced Plaintiff's testimony is contrary the ALJ's decision that Plaintiff retains the ability to engage in "frequent manipulation bilaterally," but even assuming it is, the ALJ specifically found Plaintiff's testimony that she is unable to work full-time due to restrictions in the use of her hands not supported by objective medical evidence, symptoms, and opinions of record.

The ALJ expressly noted that the absence of objective medical evidence establishing the severity of limitations resulting from her medically determinable impairments "would prevent her from doing a job that would follow the above outlined residual functional capacity assessment." (Admin. R. at 28.) In other words, the objective medical evidence does not support Plaintiff's claim she is unable to engage in frequent bilateral manipulations. The record reveals Plaintiff

complained of pain in her wrists, primarily the left wrist, to Dr. McBurney in October 2014.  Dr. McBurney's examination and x-rays were "unremarkable" with no joint tenderness, synovitis, or puffy fingers and merely general osteoarthritis and tendinitis symptoms.  Two years later, Dr. Sahi similarly reported normal x-rays, no muscle weakness, normal sensation, and good bilateral grip strength and opined that, with the exception of slight swelling, arthritis did not result in limitations in Plaintiff's joints.  From July 2017 to August 2018, various fellows from Harris Health System noted a lack of clear evidence of inflammatory arthritis, normal doppler testing, and little to no swelling in Plaintiff's joints.  The ALJ's discounting Plaintiff's claims she is unable to engage in frequent manipulations with her hands due to the lack of objective medical evidence is supported by the record.

Additionally, the ALJ indicated Plaintiff's reported limitations were not supported subjective medical evidence, or opinions of record.  The Peter Letter and Yass'ne Letter generally state Plaintiff's conditions "affect her ability to hold a full-time position" or "interfere[] with daily activities and cause[] distress" but fail to specifically identify limitations related to Plaintiff's ability to use her hands.  The only physician representing Plaintiff had any limitations in her ability to use her hands, did so after noting the absence of muscle weakness or atrophy, the retention of normal sensation to pinprick and vibration and good bilateral grip strength, and opining arthritis did not limit Plaintiff's use of her joints with the exception of slight swelling in her hands, which was treated with medication.  The ALJ was correct – opinions of record do not support the extent of limitation that Plaintiff claims.

Plaintiff's testimony regarding her inability to use her hands for only a few minutes to an hour at a time with frequent breaks, and her need to rest her hands for more than twenty four hours between work shifts, is not supported by objective or, to a great degree, subjective medical

evidence in the record.  The court finds the ALJ's discounting of Plaintiff's testimony on her ability to use her hands was proper.

### III.  Lay Witness Testimony

Plaintiff contends the ALJ erred when he rejected, in large part, the testimony of Totten and Fowler.  The ALJ discounted the lay testimony describing Plaintiff's limitations based on the absence of medical training and the tendency for friends to be sympathetic with the Plaintiff.

Friends and family members and others in a position to observe a claimant's symptoms and daily activities are competent to testify as to the claimant's condition.  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  Such testimony cannot be disregarded without comment.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).[9]  If the ALJ wishes to discount lay witness testimony, he must give reasons that are germane to the witness.  *Id.*

The ALJ provided the requisite justification to discount the testimony of Totten and Fowler.  The ALJ essentially found the lay testimony to be inconsistent with medical evidence, which is an appropriate justification supported by the evidence.  *Bayliss, 427 F.3d at 1218* (appropriate to reject lay witness testimony where it is inconsistent with medical evidence.)  Furthermore, the ALJ questioned the lay witness's ability to be completely honest, based on the natural tendency for friends to agree with and adopt limitations identified by the Plaintiff.  The

---

[9] The court notes that for all claims filed on or after March 27, 2017, the regulations set forth in 20 C.F.R. § 404.1520c govern.  The new regulations provide the ALJ is "not required to articulate how [they] considered evidence from nonmedical sources . . . ." 20 C.F.R. §§ 404.1520c(d) (2019), 416.920c(d).  As such, the ALJ is no longer required to provide reasons germane to lay witnesses to reject their testimony.  *Cf. Dodrill*, 12 F.3d at 918-19.  In this case, Plaintiff filed her claim for benefits in May 2014, well before March 27, 2017.  *See* 20 C.F.R. § 404.614 (defining when an application for benefits is considered filed).  Thus, the court analyzes Plaintiff's claim under the old standard applicable to lay witness testimony.

PAGE 25 - OPINION AND ORDER

evidence offered by Totten and Fowler is substantially similar to that provided by Plaintiff. The court has found the ALJ did not err in discounting Plaintiff's testimony and those reasons apply equally to Totten and Fowler. Moreover, Totten and Fowler did not offer evidence on how Plaintiff was limited in the use of her hands, the primary issue currently before the court. Consequently, even if the ALJ erred by failing to fully credit the lay witness testimony, such testimony is not relevant any error was harmless.

## IV. Residual Functional Capacity

Plaintiff argues the ALJ improperly assessed her residual functional capacity and accordingly erred at step five. Plaintiff claims the ALJ should have limited Plaintiff's ability to use her hands to occasionally, rather than frequently. (Brief at 5.)

The "residual functional capacity is the most [a claimant] can still do despite [his] limitations," 20 C.F.R. § 404.1545(a)(1). The ALJ found Plaintiff capable of light work, which requires lifting of twenty pounds occasionally and ten pounds frequently, and a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

Prior to determining Plaintiff's residual functional capacity, the ALJ properly discounted Plaintiff's testimony about her ability to use her hands. Additionally, he provided appropriate justification for rejecting the Peter Letter, the Yass'ne Letter, and Dr. Sahi's restriction of occasional use of Plaintiff's hands. The ALJ's residual functional capacity finding and hypothetical included limitations for which there was support in the record and, consequently, was proper. Because he posed a hypothetical question to the vocational expert that incorporated a proper residual functional capacity assessment, the vocational expert's testimony is substantial evidence for the ALJ's step five finding. Thus, that finding is affirmed.

PAGE 26 - OPINION AND ORDER

*Conclusion*

The Commissioner's findings on Plaintiff's disabilities, considering the record as a whole,

are supported by substantial evidence.  The decision of the Commissioner should be affirmed.

DATED this ___21st___ day of October, 2020.

JOHN V. ACOSTA
United States Magistrate Judge

PAGE 27 - OPINION AND ORDER